USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7-11-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DEAN LOREN,

                Plaintiff,

-v-

THE CITY OF NEW YORK, MANHATTAN
BOROUGH PRESIDENT, MANHATTAN
COMMUNITY ACCESS CORPORATION, JEANETTE
SANTIAGO, CORY BRYCE, DANIEL COUGHLIN,
GAIL BREWER, as Manhattan Borough President,
ENRIQUE HERNANDEZ, JR., President of Inter-Con
Security, INTER-CON SECURITY, ROBERT B.
SCHUMER, ROBERT D. MARCUS, as Former CEO of
TIME WARNER CABLE, ROBERT PERRY, GLORIA
MESSER, TIME WARNER CABLE, JUNE W.
MIDDLETON, CHRIS GETHARD, and ZENAIDA
MENDEZ,

                Defendants.

------------------------------------------------------------X

16 Civ. 3605 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Dean Loren, proceeding *pro se* and *in forma pauperis*, brings this action for relief under 42 U.S.C. § 1983 for alleged violations of his First Amendment right to access a public forum and under New York's Open Meetings Law, N.Y Public Officers Law Art. 7, § 103 (the "Open Meetings Law"). In his First Amended Complaint, Dkt. 6 ("FAC"), brought against a range of public and private entities and individuals, Loren appears to make two claims. The first is that defendants violated his First Amendment rights when they restricted his access to public access television channels administered by a private non-profit organization, the Manhattan Community Access Corporation (also known as "Manhattan Neighborhood Network" or "MNN"). The second is that MNN holds meetings but does not permit members of the public

to attend them, in violation of the Open Meetings Law, although he does not appear to allege that he was ever denied access to a particular meeting.

Defendants now move to dismiss. They argue that the allegations in the FAC fail to state a claim upon which relief may be granted, requiring dismissal under Federal Rule of Civil Procedure 12(b)(6), because MNN and its employees are not state actors, as required for liability under § 1983, and because Loren has not alleged that the government official and entity defendants acted pursuant to an official policy, practice, or custom, as required for municipal liability under § 1983. For the reasons below, the Court grants the motions to dismiss.

## I. Background

### A. Procedural Background

On May 11, 2016, Loren filed the original complaint. Dkt. 2. On July 14, 2016, Chief Judge McMahon, to whom this matter was previously assigned, granted Loren leave to file an amended complaint complying with Federal Rule of Civil Procedure 8. Dkt. 4. In that order, Chief Judge McMahon also denied Loren's motion to intervene, Dkt. 3, in *Halleck v. Manhattan Comm. Access Corp.*, No. 15 Civ. 8141 (WHP) (S.D.N.Y. 2015), a case involving similar claims. She explained that this lawsuit is not the proper case for a motion to intervene in a different action, and noted that Judge Pauley denied Loren similar relief when Loren sought it in the *Halleck* action. *Id.* (citing Dkts. 37, 54 in No. 15 Civ. 8141 (WHP)).

On September 9, 2016, Loren filed the FAC, the operative complaint here. Dkt. 6. On November 10, 2016, this case was reassigned to this Court. On December 27, 2016, various defendants filed motions to dismiss and memoranda of law in support. Dkts. 17–18, 21–24. On January 24, 2017, defendant Gloria Messer filed a motion to dismiss, Dkt. 35, and, on February 10, 2017, Messer filed an amended motion to dismiss, Dkt. 50.

Loren has not filed a formal opposition to the motions. Instead, across several submissions, he has filed hundreds of pages of impertinent, fantastical, and abstruse materials making claims that the Court will not summarize. The Court notes that on February 3, 2017, Loren demanded that the Court recuse itself under 28 U.S.C. § 455, but did not set out facts that might warrant recusal. Dkt. 46 at 1–2.

### B. Factual Background

The FAC's allegations are difficult to decipher, often conclusory, and almost all irrelevant. The bulk of his substantive allegations largely track allegations in the first amended complaint in *Halleck*. *Compare, e.g.*, FAC ¶¶ 81–104 *with Halleck*, No. 15 Civ. 8141 (WHP), Dkt. 39, ¶¶ 15–38. The Court has carefully reviewed the FAC. Treating it with all due solicitude in light of Loren's status as a *pro se* plaintiff, the FAC—like the pleadings in *Halleck*—appears to allege the following:

Cable operators operate pursuant to franchise agreements with local governments, and cable operators in New York City are required by the City to dedicate some channels to programming by members of the public, often referred to as "public access channels." FAC ¶¶ 81–83. Both federal law and New York State Public Service Commission ("NYPSC") regulations mandate independence in the selection of content by the cable operator and the local government. *See id.* ¶¶ 85–95. For example, the Cable Communications Policy Act of 1984 prohibits cable operators from imposing any editorial control over public, educational, or governmental access channels, with an exception for obscenity. *See* 47 U.S.C. § 531(e). And, NYPSC regulations similarly prohibit the cable operator and the local government from exercising editorial control over public access channels. *See* 16 N.Y.C.R.R. § 895.4(c)(8)–(9).

The FAC alleges that New York City awarded its cable franchises in the northern and southern parts of Manhattan to Time Warner Entertainment Company, L.P. ("Time Warner"). FAC ¶ 96. These franchise agreements require Time Warner to set aside certain cable channels for public access programming to be operated by an independent, nonprofit, membership corporation selected by the Manhattan Borough President. *Id.* ¶¶ 97–98. The Manhattan Borough President selected MNN, a nonprofit corporation incorporated in 1991, to administer the public access channels in Manhattan. Under the agreement between MNN and Time Warner, MNN is to maintain reasonable rules that provide for open access to public access channels on a nondiscriminatory basis and as required by applicable laws. *Id.* ¶¶ 99–101. MNN owns and operates two facilities—its main one on West 59th Street and another one in East Harlem—and airs programming from numerous producers and provides equipment and training at its facilities. *Id.* ¶¶ 65, 99, 131. MNN's rules help govern and regulate the use and access to public channel time and access to its facilities in light of the numerous users MNN serves. *Id.*

Loren alleges that he is and, since 1994, has been an independent producer and "advocate" of content aired on MNN's public access channels. *Id.* ¶ 108. He produces at least one show, "Little Valley Music," a live show with a six-piece band, *id.* ¶ 37, and appears also to contribute to a show called "Are You A Star," *id.* ¶ 265. The gravamen of his claims is that MNN has restricted his access to its facilities, though he remains able to submit programming for airing on the public access channels. *See id.* ¶ 309–10. In summary, he appears to allege that, starting in 2012, retaliatory actions were taken against him by MNN defendants that restricted his access to MNN's facilities and public access channels because of his views on MNN's administration. *See, e.g.*, *id.* ¶ 57. For example, Loren alleges that on March 15, 2014, defendant Jeanette Santiago, alleged to be MNN's programming director, *id.* ¶ 67, switched

4

Loren's booking without his consent to the "Closed Studio," *id.* ¶ 225. And, Loren alleges that, on April 25, 2014, defendant Chris Gethard, a producer at MNN, *id.* ¶ 79, invited Loren to join Gethard's show and that "when Loren asked to bring the band, defendant Gethard refused although defendant Gethard admitted he screwed Loren over by taking his bookings on previous nights," *id.* ¶ 228. Most recently, Loren alleges that, in September 2015, Loren's booking was deleted for two weeks "so that [defendant] June Middleton could do a taped show in the open studio to make money for her business." *Id.* ¶ 47. Loren alleges other similar instances of conduct by defendants that he claims restricted his access to MNN's facilities.

Loren seeks various injunctions along with compensatory and punitive damages, each in the amount of at least $50 million. *See id.* ¶¶ A–T (Prayer for Relief).

## II. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's *[f]actual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

A court must construe a *pro se* plaintiff's pleadings liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). "[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## III. Discussion

The Court need only address the issue of whether defendants acted under color of law, as is required for liability under § 1983, to conclude that it must dismiss this case. The allegations in the FAC do not plausibly plead that the conduct of MNN officials was done under color of law, that there was action undertaken pursuant to a policy, practice, or custom, as is required for municipal liability under § 1983, or that defendant Gail Brewer was personally involved in the alleged deprivations in this case. As a result, the Court has no occasion to reach defendants' various other arguments for dismissal, such as that, as to certain defendants, Loren's claims are barred by the statute of limitations.

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must establish (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United Sates (2) by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978).

As to MNN and its employee defendants, they can only be liable for deprivations of federal rights under § 1983 if they acted under color of state law in causing the deprivations. A private actor may sometimes undertake governmental action in particular, limited situations. If the government creates a corporation by special law and the government retains the permanent authority to appoint a majority of directors to the board of that corporation, then such a corporation is part of the government and a state actor within the meaning of § 1983 sufficient to enable liability for deprivations of First Amendment rights. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 399 (1995). This condition is not satisfied here because the Manhattan Borough President has the authority to appoint only two out of MNN's 13 board members. FAC ¶ 102.[1]

A private actor may be deemed to act under color of law to permit liability under § 1983 in certain other, well-established circumstances. "For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the state,' or the entity's functions are 'entwined' with state policies ('the joint

---

[1] MNN states in its brief that MNN actually contains a 19-member board instead of, as alleged in the FAC, a 13-member board, but agrees with Loren that the Manhattan Borough President only appoints two directors to the board. *See* Dkt. 22 at 4 n.3.

action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the state,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quotation and alterations omitted).

None of these tests is met here. The FAC is devoid of allegations that MNN undertakes conduct pursuant to the coercive power of the state or is controlled by the state; on the contrary, the interaction between the local government and MNN is limited and regulated by law. Nor does the FAC allege that MNN undertakes joint action with the state such that MNN's actions "may be fairly treated as that of the State itself," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974), or that MNN operated as a "willful participant in joint activity with the State or its agents," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (quotation omitted). And, finally, MNN has not been delegated a public function by the state, as "[t]he fact that federal law requires a cable operator to maintain leased access channels and that the fact that the cable franchise is granted by a local government are insufficient, either singly or in combination, to characterize the cable operator's conduct of its business as state action." *Loce v. Time Warner Entm't Advance/Newhouse P'ship*, 191 F.3d 256, 267 (2d Cir. 1999). MNN's conduct therefore does not meet any standard required for state action under § 1983.

As to the City defendants—the City of New York and Manhattan Borough President Brewer—the FAC does not contain sufficient allegations that the conduct at issue was undertaken pursuant to municipal policy, practice, or custom, as required for municipal liability under § 1983, or that Brewer was personally involved so as to support her liability under § 1983. A plaintiff cannot establish municipal liability under § 1983 based on a theory of *respondeat superior*. Instead, to hold a municipality liable for its employees' unconstitutional actions, a plaintiff must establish a municipal policy or custom that directly caused the plaintiff to be

subjected to a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (the "first inquiry in any case alleging municipal liability under § 1983 is the question of whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

The FAC also does not allege that Loren's First Amendment rights were violated pursuant to a municipal policy or practice that directly deprived him of those rights. Instead, his allegations are that he complained to elected city government officials that his bookings were being deleted by MNN employees, FAC ¶ 182, and that, on July 29, 2014, Brewer authorized her chief of staff to issue a draft letter regarding the banning of producers by MNN, and that the letter was circulated to certain defendants, *id.* ¶ 236. The FAC also alleges that, on July 31, 2014, he complained to Brewer about his being banned, *id.* ¶ 240, and that, on August 22–23, 2014, he was copied on complaints that were sent to Brewer. *Id.* ¶¶ 258, 260. Overall, the FAC alleges that the City and Brewer were made aware that MNN had "censored" him. *Id.* ¶ 306.

These allegations do not make up a municipal policy, practice, or custom sufficient to support liability under § 1983. Nor do these largely conclusory allegations allege a direct link between the ostensible municipal policy and the constitutional deprivations Loren alleges he suffered. The draft letter circulated by a member of Brewer's staff does not constitute municipal action that directly deprived Loren of his First Amendment rights, nor does the City's or Brewer's alleged awareness of the MNN's ostensible deprivations of Loren's First Amendment rights support liability by them. And, insofar as Loren sues Brewer in her individual capacity, *see id.* ¶ 69, Brewer's limited participation does not rise to the level of personal involvement in those deprivations required for liability under § 1983. Brewer is not, for example, alleged to

9

have directly participated in the deprivation or the creation of a policy or custom under which allegedly unconstitutional conduct occurred. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (listing the five "*Colon* factors," a showing of any one of which suffices to show personal involvement in an alleged deprivation of a federal right (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995))).

Accordingly, the Court grants the motions to dismiss, and, because the grounds for the dismissal apply to all defendants, the Court dismisses the federal-law claim in this case against all defendants, including the various defendants whom Loren has not served.[2] Having dismissed all federal claims at the threshold, the Court declines to exercise its supplemental jurisdiction over Loren's state-law claim. Although a district court has discretion to retain supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), "the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining jurisdiction over the remaining state-law claims.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). That is the case here, as the Court has no particular familiarity with this case, no discovery has occurred, and a state court would be better equipped to entertain any state-law claims that may remain available to Loren. As such, the Court dismisses Loren's state-law claim as well, without prejudice.

---

[2] The defendants whom the docket reflects have not been served are Enrique Hernandez, Jr., Inter-Con Security, Robert B. Schumer, Robert D. Marcus, Time Warner Cable, and Robert Perry. In addition, in light of this ruling, the Court has no occasion to reach other arguments made for dismissal, such as those based on qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss, and dismisses the claim arising under federal law as against all defendants. The Court declines to exercise supplemental jurisdiction over Loren's state-law claim and dismisses it without prejudice.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this order to Loren at his address of record.

The Clerk of Court is respectfully directed to terminate all motions currently pending in this case, and to close this case.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: July 11, 2017
      New York, New York